[No. 32791.   Department One.   October 15, 1954.]

FRED H. KINGWELL et al., *Appellants*, v. LLOYD HART et al., *Respondents*.[1]

[1]Reported in 275 P. (2d) 431.

*John T. McCutcheon, De Witt C. Rowland,* and *Ray Graves,* for appellants.

*Eisenhower, Hunter, Ramsdell & Duncan,* for respondents.

OLSON, J.—The question for our decision is whether or not plaintiff Ella Kingwell "voluntarily assumed" the risk of injury, suffered when the car in which she was a passenger left the highway, after its driver, defendant Lloyd Hart, fell asleep.

After a trial without a jury, the court answered this question in the affirmative, and entered judgment dismissing the action. Plaintiffs have appealed.

The court found the following facts: Plaintiff Ella Kingwell and defendant Ruby Hart are sisters. Prior to April 3, 1952, their father, Albert J. Hagen, a man approximately seventy years of age, had been ill and had left Tacoma. Mrs. Kingwell believed that his mental faculties were impaired, and was concerned about his whereabouts and welfare.

About nine o'clock in the evening of April 3, 1952, Mrs. Kingwell received a telephone call from her father from Portland, Oregon. Plaintiffs and defendants then agreed that Mrs. Kingwell and Mr. Hart would go to Portland in Harts' automobile to return Mr. Hagen to Tacoma, and that Mrs. Kingwell would pay for all of the gas, oil, meals, and other incidental expenses of the trip.

About one o'clock in the morning, April 4, 1952, Mrs. Kingwell and Mr. Hart (whom we will designate plaintiff and defendant) left Tacoma. They arrived in Portland

about six o'clock that morning and were unable to find Mr. Hagen. Thinking her father had gone to Loomis, California, to stay with another sister, plaintiff persuaded defendant to drive to that place. They left Portland about seven o'clock.

Defendant drove continuously, with only occasional stops for varying lengths of time. During the evening of April 4th and early morning of April 5th, it was necessary for defendant to make several short stops to rest, the last of which was made in the early morning hours of April 5th, shortly before the accident.

As the trip progressed, plaintiff also became tired and slept in the front seat of the automobile during a portion of the trip. Because she was a practical nurse, she had knowledge of the limitations of human endurance. She knew that defendant had not slept very much during the evening of April 3rd or during the day of April 4th, except for a brief period in the car beside the road. Her husband had warned plaintiff and defendant not to drive straight through to California, but, notwithstanding these facts, plaintiff continued to ride with defendant and urged him to continue the journey. Just before the accident, plaintiff noticed that defendant looked very gray. He informed her that he would have to stop and get some rest (which he did). She was aware of the fact that he was sleepy, and "fully aware of the danger that defendant, HART, might fall asleep at the wheel." He did fall asleep, and the automobile left the highway, seriously injuring plaintiff.

Having found these facts, the court concluded that plaintiff was not a guest in defendant's automobile; that defendant was negligent in falling asleep while driving, and that plaintiff "voluntarily assumed any and all risks and dangers in riding in defendant's automobile at the time of the accident."

This latter defense was pleaded by an amendment made at the conclusion of the evidence, when the court granted defendants' motion to amend their answer to conform to the proof. Rule of Pleading, Practice and Procedure 6 (9), 34A Wn. (2d) 72. We find no merit in plaintiffs' con-

404

tention that this ruling was reversible error, regardless of defendant's assertion that the amendment did not plead a new defense, but alleged one within the defense of contributory negligence pleaded in the answer. The evidence prompting the amendment was admitted without objection. See *Flagg v. Flagg*, 192 Wash. 679, 685, 74 P. (2d) 189 (1937), and cases cited. The court offered plaintiffs additional time to consider the amendment and the new issues, if any, it might present. After a short recess, plaintiffs' counsel interposed a general denial and announced that they were ready to proceed. They did not request further time to consider or prepare for any new issue, and now cannot assert successfully that this ruling was a prejudicial abuse of discretion.

After the amendment, the issues in the case, in addition to that raised by the amendment, were the negligence of defendant in falling asleep, and the contributory negligence of plaintiff tendered in the original answer. On this appeal, no issue is presented regarding the negligence of defendant or the determination that plaintiff was not a guest in defendant's car, but assignments of error are directed to portions of the findings of fact pertinent to the allegations of the trial amendment, upon which the court based its judgment.

The common law of the state of California regarding this defense was not pleaded or proven. Consequently, it is assumed to be the same as that of the state of Washington. *Allen v. Saccomanno*, 40 Wn. (2d) 283, 285, 242 P. (2d) 747 (1952), and cases cited.

It is well settled that defendant, as respondent, is entitled to the benefit of all the evidence or inferences from it in support of the judgment, and that the findings of the trial court will not be disturbed on appeal unless the evidence clearly preponderates against them. But this latter rule has no application where, as here, there is no substantial dispute upon the facts, and the appeal turns upon the proper conclusions to be drawn from practically undisputed evidence. In such cases, this court has the duty of determining for itself the proper conclusion to be drawn from the

evidence. *Shultes v. Halpin*, 33 Wn. (2d) 294, 306, 205 P. (2d) 1201 (1949), and cases cited.

■■ The defenses of contributory negligence, assumption of risk, and *volenti non fit injuria* are discussed and differentiated in previous opinions of this court, the last being *Ewer v. Johnson*, 44 Wn. (2d) 746, 758, 270 P. (2d) 813 (1954), and case cited. The doctrine of assumption of risk, as it is ordinarily understood, is not applicable in a tort case like the one at bar, because of the absence of master and servant or other contractual relationships. If it be designated "voluntary exposure to unreasonable risk," the connotation is more nearly correct, in that it implies the element of willful assent expressed by the maxim *volenti non fit injuria*—no wrong is done to one who consents. But the latter maxim applies independently of any contractual relationship or of any negligence of the plaintiff or defendant. Contributory negligence or unreasonable conduct on the part of the plaintiff in view of the foreseeable risk, may be confused with the latter defense, where no real consent to relieve defendant of any duty can be found, but plaintiff has exposed himself voluntarily to an appreciated and known unreasonable risk. In other words, an added inquiry appears if contributory negligence also is asserted, that is, was plaintiff's own conduct under the circumstances unreasonable, in view of the foreseeable risk, so that it can be said that there was a breach of duty on the part of the injured person. More than one of these defenses are available to a defendant if pleaded and proven.

It follows that the inquiry in a tort case, presenting the issues raised on this appeal, may include three questions: Did plaintiff (1) know of and appreciate the danger or risk involved, and also (2) did he voluntarily consent to expose himself to it ("voluntarily" including the meaning that defendant's conduct has left plaintiff a reasonable election or alternative. See *Emerick v. Mayr*, 39 Wn. (2d) 23, 25, 234 P. (2d) 1079 (1951)), and (3) was the exposure unreasonable, that is, was it such that a reasonable person in plaintiff's position would not expose himself to it, or, after accepting a

reasonable risk, did plaintiff exercise proper care for his own protection against that risk.

■ If the first two questions are answered affirmatively, the defense under the *"volenti"* maxim is established regardless of negligence. If the record is such that no real consent to relieve defendant of any duty can be found, and the issues are framed as they are here, the third question must be examined. If it is answered affirmatively, the defense of contributory negligence is established. In the first two of these inquiries, the plaintiff's state of mind is controlling, and, upon the third, the extent of the known incompetence of the defendant, compared with the disadvantage of plaintiff's position, if he did not expose himself to the risk, is important to consider. The burden of proof is upon defendant to establish the elements of these defenses. See 2 Restatement, Torts, 1230 *et seq.*, § 466, comments c, d, e; 4 Restatement, Torts, 491 *et seq.*, § 893, comments a, b; Prosser on Torts, 376 *et seq.*, § 51; 4 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.), 706, 719, §§ 2511, 2513.

In the case at bar, the evidence disclosed that defendant was thirty-seven years of age at the time of the trial. He was suffering from no physical disability. He was an experienced automobile driver and testified that he had driven a car for about twenty years and had made many long journeys. Plaintiff knew these facts, and had said that she "had never ridden with a better driver."

The last time defendant stopped to rest was about fifteen miles from the scene of the accident. This was during the hours of darkness. On this occasion, he slept for a length of time which is not definitely established. He testified:

"Well I remember that shortly before it [the accident] took place I had noticed that I was a little bit dozey and so I pulled off—I told Mrs. Kingwell, I said, 'I'm going to have to rest. I just need to get a little rest,' and so I pulled off to the side of the road and rested sitting up in the car . . . And so after I had been resting awhile—I don't remember how long, I awakened. . . . And then I wakened and seemed to be rested, and so I continued."

Plaintiff testified that she thought defendant needed sleep, but that he reassured her, telling her that "he had gone twice as far as that and didn't need sleep and so he was the brains. I had the money, he had the brains." Her left hand was crippled, and she had never driven and could not drive an automobile. It was not shown that she was familiar with the geography of California.

We do not discuss the findings of the court regarding the warning given plaintiff by her husband when they left Tacoma, or her knowledge of the limits of human endurance because of her nursing experience, or whether or not she urged defendant to continue the journey. It is doubtful that they are sustained by the evidence. However, the evidence is undisputed that defendant stopped whenever he desired. At the last stop, he rested for an undisclosed period of time, and then assured plaintiff that he was refreshed and able to proceed. This was but a short time and distance not only from the scene of the accident but also from the ultimate destination of the parties.

■ Considering these facts, and the fact that the symptoms of drowsiness or sleepiness may be largely subjective, as distinguished from cases involving drunkenness of the driver or defective equipment, and that there was no testimony of any objective symptom shown by defendant's driving which plaintiff could or should have observed to make her aware of the danger; and the further facts that the critical events occurred in the early morning hours of darkness, the area in which the parties were traveling was strange to plaintiff, and leaving the car would have delayed her reaching her father, and, consequently, the alternatives offered to her if she left it were so uncertain and unattractive that no real or reasonable choice was open to her, we conclude that defendant did not sustain the burden of proof upon the elements we have stated are necessary to establish any phase of either defense. Plaintiff's knowledge and appreciation of the risk, her voluntary consent to expose herself to it, or, in any event, that her exposure to it was unreasonable, have not been proven.

Evidence of plaintiff's damages was not included in the statement of facts, the case being brought here on a short record pertaining only to the issue of liability. We sustain the assignments of error to the findings and conclusions on this issue. Consequently, the judgment must be and is reversed, and the cause remanded for the assessment of plaintiffs' damages.

GRADY, C. J., MALLERY, HAMLEY, and FINLEY, JJ., concur.

[1]Reported in 275 P. (2d) 436.