[No. 33013. Department One. July 28, 1955.]

JAMES C. ROUSE, *Appellant,* v. MORRISON-KNUDSON *et al., Defendants,* J. G. SHOTWELL *et al., Respondents.*[1]

[1]Reported in 287 P. (2d) 133.

*Kelly Hancock,* for appellant.

*Crollard & Crollard,* for respondents.

FINLEY, J.—This is an action for damages arising out of a collision between a truck and trailer rig and a small pickup truck. The plaintiff brought the action against the named defendants, several corporations doing business as Columbia River Construction Co. Thereafter, the plaintiff amended his complaint, and brought in the marital community of J. G. Shotwell and wife, doing business as J. G. Shotwell Co., as parties defendant. During the trial, it was conclusively proved that the truck and trailer which collided with the plaintiff's pickup truck was owned by defendants Shotwell and was operated by their employee in the course of his employment; further, that the defendants Shotwell were independent contractors. Thereupon, an order of nonsuit was entered as to the defendant corporations, doing business as the Columbia River Construction Co. No appeal has been taken from this order.

At the close of the plaintiff's case, the defendants Shotwell moved for a nonsuit. The motion was denied. At the close of all testimony, defendants again challenged the sufficiency of plaintiff's evidence and moved that the action be dismissed. This motion also was denied. The case was submitted to the jury on the issue of defendants' negligence and plaintiff's contributory negligence. A verdict of ten thousand dollars for plaintiff, James C. Rouse, resulted. Thereupon, the defendants prevailed on a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. Subsequently, James C. Rouse initiated this appeal.

The evidence shows that James C. Rouse was a laborer, sixty-four years of age, when the collision occurred. He was employed in the construction of the Chief Joseph

Dam. Employed on the swing shift, he finished work at 12:30 a. m. on October 24, 1952, and proceeded to where his car was parked. He met a fellow worker there by the name of Johnson, to whom he offered a ride home. They proceeded in appellant Rouse's vehicle, a 1951 Ford pickup truck, on a county road leading from the dam site to Bridgeport, in a westerly direction towards the intersection of this road with state highway No. 10A, which runs in a north-south direction. The collision occurred near or in this intersection. The county road had a gravel surface near the dam site, but for thirteen hundred feet prior to the intersection its surface was hard blacktop.

The respondents were engaged in the sand and gravel business, and sold their products to the Columbia River Construction Co. Their employee, Wesley Ballew, driving one of the trucks belonging to J. G. Shotwell Company (a heavy duty rig, consisting of a tractor and trailer of an over-all length of forty-six feet), had it filled with approximately twenty cubic yards of gravel and drove south on the state highway to deliver his load at the dam site. The total weight of vehicle and load was between forty-five and fifty tons. At about 12:45 a. m. October 24, 1952, either when he started to turn left in the intersection or when he actually entered the county road, the middle part of the gravel trailer and the left front part of appellant's pickup truck collided. As a result of the collision, appellant suffered cuts on his face and neck, bruises on his leg, and a dislocated left shoulder which resulted in a permanent impairment of the use of his left arm. His passenger, Johnson, suffered severe injuries, from which he died four days later. Damages to the pickup truck included a bent hood, which was pushed inward, a smashed left headlight, as well as the windshield and the left window of the driver's cab.

The evidence relative to the collision is conflicting. Appellant placed the point of impact as the northern or his right-hand side of the county road, and at a point before he entered the intersection. He testified that he stopped approximately two car-lengths from the intersection, and that, seeing no traffic, he had started his pickup truck in low

gear, had proceeded about two steps at a speed of approximately five miles per hour, when his truck was hit by the middle section of the trailer attached to respondents' truck, which had cut the corner when turning into the county road.

The testimony of Mr. Ballew (driver of respondents' truck and trailer) placed the point of collision in or at the center of the intersection. He testified that he saw the appellant stop his truck about seven car-lengths from the intersection; that appellant then started his truck rolling again, and ran into the middle part of Ballew's trailer, which was negotiating the turn in the intersection, and on the proper side of the road.

Two other eyewitnesses (employees of respondents, who were driving behind the gravel truck and trailer rig) placed the point of collision near the center of the intersection. Their testimony was conflicting as to the speed of appellant's pickup truck. One of them testified that he was not sure whether appellant stopped some distance before the intersection. The other witness was positive that appellant did not stop before entering the intersection. There was, also, the evidence of several witnesses who came upon the scene of the collision from a few minutes to over an hour after the event. Their testimony as to the position of the vehicles, tire skidmarks, and fragments of glass was conflicting. Also, the testimony was conflicting as to (1) whether the intersection was dusty at the time, causing poor visibility, as claimed by the appellant and several witnesses, or (2) whether there was no dust, leaving the view unobstructed, as testified by Mr. Ballew and many other witnesses.

George S. Smith, of the Washington state patrol (called as a witness by respondents), testified that he had been summoned to the scene of the collision; that he found glass from the headlight of the pickup truck in the intersection and concluded that this was the point of collision; that he interviewed appellant twice—the first time about an hour after the event, while appellant was in the hospital, and the second time about three days later, after appellant returned home; that, during the second interview, appellant

signed a statement in which he said: that he (appellant) had stopped at the intersection, had not seen any oncoming traffic because of dust, so had started to cross the intersection; that, when he saw the truck and trailer, he had tried to stop, but his wet rubber boot slipped from the brake pedal and hit the gas pedal instead. In his examination in chief, the appellant stated that he did not remember ever having made such a statement.

In *Billingsley v. Rovig-Temple Co.,* 16 Wn. (2d) 202, 203, 133 P. (2d) 265, we said that:

"A challenge to the sufficiency of the evidence, a motion for nonsuit, a motion for a directed verdict, or a motion for judgment notwithstanding the verdict admits the truth of the plaintiff's evidence and all inferences that reasonably can be drawn therefrom, and requires that the evidence be interpreted most strongly against the defendant, and in the light most favorable to the plaintiff."

See *Neel v. Henne,* 30 Wn. (2d) 24, 190 P. (2d) 775; *Shook v. Bristow,* 41 Wn. (2d) 623, 250 P. (2d) 946; *Kemalyan v. Henderson,* 45 Wn. (2d) 693, 277 P. (2d) 372; *Johnson v. Department of Labor & Industries,* 46 Wn. (2d) 463, 281 P. (2d) 994.

If the jury evaluated the evidence in the light of the above rules, it could, and apparently did, find that the collision occurred on appellant's right side of the county road and not in the intersection; consequently, this would place the heavy gravel trailer on the wrong side of the road. From this, the jury could have concluded, and seemingly did conclude, that respondents' driver was negligent in cutting the corner. Apparently, the trial judge made the same analysis of the matter when he ruled on the motion for nonsuit and on the motion for dismissal.

Before proceeding further, we note the appellant testified that, at the time of his first interview with patrolman Smith, he was under the influence of injections given to him by the doctor, and that, at the time of the second interview with the patrolman, he signed the prepared statement without reading it. (This was denied by patrolman Smith.) Appellant also testified that he had no recollection of having made the admissions as to negligence which were

contained in the statement produced by the patrolman. Under the circumstances, it was peculiarly within the province of the jury to decide which version of the matter was to be believed.

The trial judge granted judgment notwithstanding the verdict, apparently assuming that appellant's testimony, that vision in the intersection was obscured by a cloud of dust, was correct; and the judge concluded that appellant, being aware of the obstructed vision, was guilty of contributory negligence as a matter of law when he drove his truck into the dust and the obscured area, under the rule announced by us in *Ewer v. Johnson*, 44 Wn. (2d) 746, 270 P. (2d) 813. The *Ewer* case, *supra,* involved a multiple car collision *in a cloud of dust*. We approved an instruction to the jury that one driving into a cloud of dust must exercise a very high degree of care.

■■ While the rule evinced in the *Ewer* case, *supra,* is correct, the result does not necessarily follow under the facts of the instant case. First, since the presence of dust was disputed, the jury might have disbelieved the appellant and the other witnesses in this particular, and might have found that there was no obstruction to vision, thus making the rule of the *Ewer* case, *supra,* inapplicable. Or, second, the jury might have found that appellant did drive into the dust, but, by accepting his testimony that he did not move more than two steps, the jury could have concluded that the collision would have occurred irrespective of the acts of Mr. Rouse, the driver of the pickup truck. In other words, if these facts were to be believed, the driving into the cloud of dust did not contribute to the collision, since it would have happened anyway, but the end instead of the middle of the trailer possibly would have hit the appellant. To prevent recovery, appellant's failure to exercise reasonable care for his own safety must be a contributing cause of the injury. *Hynek v. Seattle,* 7 Wn. (2d) 386, 111 P. (2d) 247; *Heinlen v. Martin Miller Orchards,* 40 Wn. (2d) 356, 242 P. (2d) 1054.

■ The final question to be determined is the one of damages. In his complaint, the appellant prayed for an

award of twenty-five thousand dollars for the injuries to his person and property. The jury returned a verdict for ten thousand dollars. Besides a prayer for damages for his pain and suffering, the appellant asked for special damages for hospital and medical expenses, past and future, for the loss of earnings, and for permanent partial disability. The medical testimony showed that appellant could not lift his arm above ninety degrees; that he suffered loss of muscle power; and that he would be unable to perform the type of heavy work he had done prior to his injury. Appellant and his expert witnesses were cross-examined on the issue of the extent and permanency of the disability. From all of the evidence, the jury might have found that, as a result of the dislocation of his shoulder, appellant would be permanently prevented from performing construction and similar work. While the verdict is substantial, it is not so excessive as to show passion or prejudice on the part of the jury. In *Orme v. Watkins,* 44 Wn. (2d) 325, 335, 267 P. (2d) 681, we said:

"It may very well be that if we had been on the jury we might not have awarded damages in the amount of $5,000, and if any one of us had been the trial judge, he might have reduced the amount of the award. But we were not on the jury, and none of us was on the trial bench. The jury and the trial court saw and heard the witnesses. We did not. Although, as indicated before, we may feel that the amount of the verdict was too high, still, we cannot find from the record that the damages awarded in the verdict by the jury were so excessive as *unmistakably* to indicate that the amount of the verdict must have been the result of passion or prejudice."

See *Kramer v. Portland-Seattle Auto Freight, Inc.,* 43 Wn. (2d) 386, 261 P. (2d) 692; *Mellis v. Merritt,* 44 Wn. (2d) 181, 265 P. (2d) 1058; *Johnson v. Howard,* 45 Wn. (2d) 433, 275 P. (2d) 736.

For the above reasons, the judgment is reversed and the verdict of the jury is reinstated.

HAMLEY, C. J., SCHWELLEBACH, DONWORTH, and ROSELLINI, JJ., concur.

September 20, 1955. Petition for rehearing denied.