[No. 34749.  Department Two.  September 10, 1959.]

JAMES E. DEHN, *Respondent*, v. JAMES KOHOUT, *Appellant*.[1]

*Carnahan, Gordon & Goodwin*, for appellant.

*Dewitt C. Rowland* and *Edwin R. Johnson*, for respondent.

WEAVER, C. J.—At the conclusion of plaintiff's evidence, the trial court granted defendant's motion for a nonsuit. Defendant now appeals from an order granting plaintiff a new trial.

[1]Reported in 343 P. (2d) 883.

The primary issue is whether the maxim of *volenti non fit injuria* bars plaintiff's recovery.

Plaintiff had lived in defendant's apartment house for five years. There were front and back stairways. Plaintiff had used the back stairway at least twice a week during his tenancy. He preferred, however, to use the front stairway because he considered the back stairway dangerous. It was enclosed on both sides; it did not have a handrail.

On the day of the accident, plaintiff was helping another tenant move from her apartment, which was on the second floor and next to the rear stairway. Plaintiff was carrying a box weighing fifteen or twenty pounds when he tripped over a raised threshold that extended the width of the rear stairway. The threshold was one half to five eighths of an inch above floor level, but its height was hidden from view by the warped or cupped linoleum behind it. Plaintiff sustained injuries from his fall down the stairway. Although plaintiff was aware of the general condition of the stairs, he did not have specific knowledge of the raised threshold.

■ The maxim *volenti non fit injuria* means "That to which a person assents is not esteemed in law an injury." *Walsh v. West Coast Coal Mines*, 31 Wn. (2d) 396, 407, 197 P. (2d) 233 (1948).

■ The principle underlying the maxim is stated in *Gover v. Central Vermont R. Co.*, 96 Vt. 208, 118 Atl. 874 (1922):

" . . . If one knowing and comprehending the danger voluntarily exposes himself to it, though not negligent in so doing, he is deemed to have assumed the risk and is precluded from a recovery for an injury resulting therefrom. The maxim is predicated upon the theory of *knowledge and appreciation of the danger and voluntary assent thereto.*" (Italics ours.) (Quoted with approval in *Walsh v. West Coast Coal Mines, supra*, p. 407, and *Ewer v. Johnson*, 44 Wn. (2d) 746, 759, 270 P. (2d) 813 (1954)).

■ More specifically, this court pointed out, in *Kingwell v. Hart*, 45 Wn. (2d) 401, 405, 275 P. (2d) 431 (1954), that the problem, here presented by counsel, finds solution in the answer to three questions:

". . . Did plaintiff (1) know of and appreciate the danger or risk involved, and also (2) did he voluntarily consent to expose himself to it ('voluntarily' including the meaning that defendant's conduct has left plaintiff a reasonable election or alternative. See *Emerick v. Mayr*, 39 Wn. (2d) 23, 25, 234 P. (2d) 1079 (1951)), and (3) was the exposure unreasonable, that is, was it such that a reasonable person in plaintiff's position would not expose himself to it, or, after accepting a reasonable risk, did plaintiff exercise proper care for his own protection against that risk." (p. 405.)

"If the first two questions are answered affirmatively, the defense under the '*volenti*' maxim is established regardless of negligence. . . . In the first two of these inquiries, the plaintiff's state of mind is controlling, . . ." (p. 406.)

A careful reading of plaintiff's evidence convinces us, as it did the trial court upon reconsideration, that it cannot be said that the maxim *volenti non fit injuria* forecloses plaintiff's recovery as a matter of law.

Plaintiff was candid and honest in speaking of his knowledge of the general condition of the two stairways and his apprehension in using the back stairway; but the most his testimony discloses is his appreciation of the difference between the front and back stairways. He expressed a preference in his use of them. The trial court observed

". . . *He did not, however, know of the raised board* which constituted the top step upon which he caught his foot and which precipitated him into the stairway, in an unbalanced condition and, as a consequence, of course, he did fall." (Italics ours.)

In *Ewer v. Johnson*, 44 Wn. (2d) 746, 759, 270 P. (2d) 813 (1954), we approved an instruction which stated in part:

" ' . . . if he comprehends the nature and *the degree* of the danger and voluntarily takes his chance, he must abide the consequences, whether he is fortunate or unfortunate in the result of his venture.' " (Italics ours.) (p. 759.)

In the *Ewer* case, the injured plaintiff was working, by choice, in a position of obvious peril—in a dust cloud that

obscured traffic. The *"volenti"* doctrine did not prevent plaintiff's case from being submitted to the jury because there was evidence that plaintiff believed another man was outside the dust cloud stopping traffic, a belief that was contrary to the facts.

By analogy, the *Ewer* case controls the instant one; there is no evidence that plaintiff knew of the raised threshold.

We agree with the trial court

" . . . that in order to prevail upon the defense of volenti as a matter of law that the Defendant must show that the Plaintiff actually knew of the precise condition which added to his peril, and if the Plaintiff did not have such knowledge, how can it be said that he could appreciate the degree of risk involved? . . ."

Whether plaintiff came within the purview of the maxim was a question of fact for the jury.

The order granting a new trial is affirmed.

HILL, DONWORTH, and FOSTER, JJ., concur.

ROSELLINI, J. (dissenting)—I believe that the maxim of *volenti non fit injuria* bars the plaintiff's recovery.

The plaintiff testified as follows as to how the accident occurred:

"Q. And what happened to you on that day?

"A. Well, I was helping my neighbor, right in the rear of me, she was going to move to Yakima; and she had several boxes, small boxes to pack; and I thought I would give her a hand. I wrapped them up for her and so there was one box there in particular that I knew that had dishes in it, so I knew that because I could feel it was a little heavier than the rest of them, so I picked that one up; I didn't want to have her carry it down; it was a little heavier than the rest, not too heavy for me; so I playfully put it up on my shoulder going out the door and turned around, kind of smiled at her, you know, just the way you would, you know, and about, oh, I guess about three paces before I hit the threshold of the stairway, I let it slide down onto my right arm, put out my left arm to kind of steady me and just at the top of the stairs there, my heel caught on something. I don't know what it was, and I guess I missed the first step with my left foot and still going pretty good down there until I got to the turn of the stairs, and where the stairs nar-

row, you know, on the turn. And that is where I lost my footing and down to the landing.

"  . . .

"Q. Is there anything in there [showing Exhibit], do you recognize anything in there that you caught your foot on?

"A. Well, I really don't know what it was; it was something right at the threshold; it could have been that threshold there; it is raised about five-eighths of an inch there.

"Q. And at that point, Mr. Dehn, did you, what happened with reference to your balance, at the top?

"A. Well, I just caught my heel on something there at the top there; and I suppose I missed the first step. I know I was taking pretty long steps down there trying to get my balance. I got down to the turn and that's where I lost my footing.

"Q. Had you lost your balance at the top of the steps?

"A. Right at the top of the steps, yes."

The effect of the remainder of the plaintiff's testimony may be summarized as follows:

(1) He had lived there five years and had used those rear stairs once or twice a week during that time; (2) he always used the front stairway when carrying groceries or packages because he thought it safer; (3) he had noticed no change in the hall or back stairs in the five years he had lived there; (4) he thought the rear stairway was dangerous and didn't use it much; (5) he decided to carry a package of dishes weighing fifteen or twenty pounds down the rear steps because it was a little more convenient.

The respondent knew of and appreciated the danger; yet, for the sake of convenience, he chose the dangerous rear stairway which was a few steps closer to the sidewalk, where he was going to leave the box, than was the front stairway. He had previously avoided carrying packages such as the box of dishes down the back stairs because he had recognized that this was too dangerous. He deliberately chose to encounter the risk which he fully comprehended.

I believe that the evidence establishes the doctrine of *volenti non fit injuria*, as announced in *Kingwell v. Hart*, 45 Wn. (2d) 401, 275 P. (2d) 431.

I would reverse.