[No. 38434.   Department One.   March 23, 1967.]

HELEN C. COCKLE, as *Administratrix, Respondent* v. GENERAL ELECTRIC CO., *et al., Appellants.*

C. J. MITCHELL, JR., *Respondent,* v. CHARLES C. MCFALL *et al., Appellants.**

*Reported in 425 P.2d 665.

*Gavin, Robinson, Kendrick, Redman & Mays* and *John Gavin*, for appellants.

*Horton & Wilkins*, by *Hugh B. Horton*, for respondent Cockle.

*Nason, Sullivan & Talbot, Chas. H. W. Talbot*, and *John R. Sullivan*, for respondent Mitchell.

HILL, J.—Can it be said that under the facts and circumstances of this particular case that certain individuals were, as a matter of law, contributorily negligent, or that they, again as a matter of law, knowing and comprehending a danger voluntarily exposed themselves to it (volenti non fit injuria)?

Donald Cockle, in his employer's flatbed truck, had been towing a pickup truck owned and driven by C. J. Mitchell, Jr., in an effort to get the pickup started. They were traveling west on Abbot Street in Richland when the engine of the Mitchell truck started. Both the trucks then stopped; Cockle and Mitchell alighted from their trucks and busied themselves with disengaging the cable by which the Mitchell truck had been towed. It was first removed from the Cockle truck, and both men were crouched or bent over in front of the Mitchell truck attempting to unfasten the cable from that truck when it was rearended by a passenger bus of General Electric Company, driven by its employee, Charles C. McFall.

The Mitchell truck was knocked forward onto Cockle, killing him almost immediately and hitting Mitchell in such a way that though he was knocked clear of the truck, he sustained serious injuries.

Actions were commenced against General Electric and its bus operator by the administratrix of Dallas W. Cockle's estate and by Mitchell.

The trial court submitted the case to the jury on the issues of the negligence of the defendants (General Electric and its driver) and their defenses of contributory negligence and volenti non fit injuria.

The jury brought in a verdict for both plaintiffs, and judgments were entered on the verdicts after the trial court had denied a motion for judgment n.o.v. or for a new trial.

General Electric and its bus operator appealed. They concede that there was sufficient evidence of their negligence to take that issue to the jury but insist that we should hold that Mitchell and Cockle were either contributorily negligent, as a matter of law, or that they, knowing and comprehending a danger, voluntarily exposed themselves to it as a matter of law.

█ In *Chadwick v. Ek,* 1 Wn.2d 117, 128, 95 P.2d 398 (1939), we discussed the duties and responsibilities of a person who alights from a vehicle and stands upon a highway.

A person who stands upon a highway must exercise reasonable care for his or her own safety. Whether the person has complied with this requirement, must depend upon all the circumstances of the particular case. Among the elements to be taken into consideration are the type of the highway, its locality, the mode of travel, the amount of traffic, the time of the occurrence, the weather conditions then existing, the purpose for which the parties were on the highway, and their opportunities to avoid injury.

We there said that,

The term "reasonable care" means that care which a reasonably prudent person would have exercised under the same or similar circumstances. (p. 129)

With all of this we are still in full accord. Applying the test suggested, regarding the circumstances to be considered in determining whether reasonable care has been ex-

ercised by the person afoot upon the highway, we find relatively few cases in which it has been held that a person who has alighted from his vehicle and was afoot on the highway when injured was negligent, as a matter of law, and no cases in which it has been held that he had voluntarily and comprehendingly assumed a known danger, as a matter of law.

We shall first consider our cases with reference to the maxim of volenti non fit injuria, as applied to persons injured on our highways. We have held that the trial court properly instructed on the maxim of volenti non fit injuria and did not err in refusing to hold that the defense had been established as a matter of law. *Ewer v. Johnson,* 44 Wn.2d 746, 270 P.2d 813 (1954); *Mitchell v. Rogers,* 37 Wn.2d 630, 225 P.2d 1074 (1950) (as interpreted by *Anderson v. Rohde, infra*), *Frasch v. Leedom,* 62 Wn.2d 410, 383 P.2d 307 (1963); and in a nonjury case, that the elements required to sustain that defense had not been established. *Kingwell v. Hart,* 45 Wn.2d 401, 275 P.2d 431 (1954).

We have said that it was error to instruct upon that maxim in *Rickert v. Geppert,* 64 Wn.2d 350, 391 P.2d 964 (1964), and *Anderson v. Rohde,* 46 Wn.2d 89, 278 P.2d 380 (1955). The only volenti-non-fit-injuria case on which the defendants rely is *Ewer v. Johnson, supra.* In that case, the plaintiff was injured when he entered a dust cloud with his truck to tow a car, belonging to one Rudd, and stalled in the dust cloud. After hooking a chain to the car to be towed, the plaintiff was walking back to his truck when the Rudd car was hit and pushed against the plaintiff's truck, pinning the plaintiff between the two vehicles. It was urged that the plaintiff, in entering the dust cloud, came within the maxim volenti non fit injuria. As in the present case, the trial judge submitted that issue to the jury. After a verdict and judgment for the plaintiff, we affirmed holding that under the evidence it was a question of fact for the jury to determine whether or not the plaintiff came within the purview of the maxim volenti non fit injuria.

That case, with a voluntary entry into a dust cloud, seems to us a much stronger case for a consideration of the

application of the maxim than the present; and we regard it as a strong authority for holding that, if the maxim has any applicability at all under the circumstances of the present case, we could say no more than was said in *Ewer v. Johnson, supra*: that the issue was properly submitted to the jury.

We now direct our attention to the cases relied on by the defendants to support their contention that contributory negligence was established as a matter of law.

*Chadwick v. Ek, supra,* involved the drivers of two cars which had collided. The drivers were standing on the highway in back of one of the cars with their backs half turned to approaching traffic, exchanging identifications, when they were hit by an approaching car. By taking two or three steps, they could have been off the highway and there made their exchange of identification in safety. The collision occurred on the heavily traveled Dunlap Canyon road between Renton and Seattle, and the time was during a morning rush hour. Both drivers, Mrs. Chadwick and Mr. Benoit (the latter was killed) were, the court said:

> well aware of the atmospheric conditions and their effect upon the visibility of others using the highway; they knew that the range of vision did not exceed one hundred feet even with a clear windshield, and that such vision would be reduced progressively as the moisture froze upon the windshield of a moving automobile; they knew that the highway was heavily traveled and that automobiles would be approaching at any moment, and that it was proper for north-bound traffic to proceed along the very lane in which they were standing. (p. 129)

Actions by Mr. and Mrs. Chadwick and the executrix of Mr. Benoit's estate against the driver of the car which hit Mrs. Chadwick and Mr. Benoit, resulted in judgments for the plaintiffs, which this court reversed—directing the dismissal of the actions because of the contributory negligence of Mrs. Chadwick and Mr. Benoit.

In *Jess v. McNamer,* 42 Wn.2d 466, 255 P.2d 902 (1953), a nonsuit was granted at the close of plaintiff's case, and we affirmed. A truck driven by Jess developed engine trouble

on Snoqualmie Pass, a main east-west highway, at about 2 p.m. in the afternoon. The truck was maneuvered to the right side of the road close to a snowbank, but still encroaching somewhat on one of the driving lanes. It was on a straight stretch of highway about 150 to 200 feet west of a curve. It continued to snow all afternoon. Jess had no flares, reflectors, electric lanterns, or other warning devices as required by statute.[1] More than 3 hours later, sometime between 5 and 6 p.m., a car driven by defendant McNamer, which was traveling too fast, rearended the Jess truck. The tail lights on the Jess truck were burning, but we pointed out that while they should have been seen, they gave no notice that the truck was stalled. Jess and his companion had discontinued their efforts to direct traffic around their truck because, as his companion testified, it "finally got so dark we had to quit that."

We affirmed the nonsuit, pointing out that a negligent driver was entitled to a warning of an obstructed highway and probably needed it more than a careful driver. We held that the failure to put out warning signals, as required by statute, was unquestionably a proximate cause of the collision, and said:

> The evidence plainly indicates that visibility and road conditions were constantly worsening as darkness approached. Later in the evening, driving conditions became so bad that the pass was closed to all traffic. (p. 470)

Other cases cited by the defendants have little similarity to the factual situation before us.

*Hynek v. Seattle,* 7 Wn.2d 386, 111 P.2d 247 (1941), was one of a long series of streetcar cases in which we held that plaintiffs were contributorily negligent, as a matter of law, if they stepped in front of a streetcar which was a short distance away, well illuminated, and approaching at a rapid rate of speed.

*Emanuel v. Wise,* 11 Wn.2d 198, 118 P.2d 969 (1941), was one of an even longer series of cases in which a disfavored

---

[1]Then RCW 46.40.210; now RCW 46.37.440 and 450.

driver in an intersection-collision case was held to be negligent, as a matter of law, for failure to yield the right of way.

*Brucker v. Matsen,* 18 Wn.2d 375, 139 P.2d 276 (1943), involved two men on foot in a highway-collision case, but presented a very different factual situation. The action was by a motorist who, with the driver of the defendant's wrecker, was afoot on a highway while an effort was being made to hoist his disabled car to a position where it could be hauled away for repairs. While so engaged, the motorist was injured when a concededly reckless driver ran into the wrecker and thereby caused injuries to the motorist. The motorist was not suing the reckless driver, as in this case, but was suing the owner of the wrecker and the driver thereof because of the claimed negligence by the driver of the wrecker in not warning him of the approach of the recklessly driven car, in placing the wrecked car on the wrong side of the road, and in not putting out warning flares. We would have the same situation here, if Mitchell were suing the Cockle estate or vice versa. The plaintiff was nonsuited, and appealed from the judgment of dismissal.

The court there said that if there was a dangerous situation, the plaintiff's knowledge of the danger equaled that of the driver of the wrecker who was on the road with the plaintiff, and that no liability was predicable for "the injury proximately resulting therefrom." The difference in the relation of the parties gives this case no value as precedent in our present consideration.

We can agree that parties who stand on a heavily traveled highway during a rush hour for the purpose of exchanging identification, knowing that visibility is badly impaired and getting worse, and particularly when there is no reason why they could not stand off the highway for that purpose, are contributorily negligent (the *Chadwick* case).

We can agree, too, that parties who leave a truck stopped partially on a heavily traveled highway for several hours—with darkness falling and no flares, electric lanterns

or reflectors on the roadway, with the additional impairment to visibility due to falling snow, and who have ceased their own efforts to warn approaching traffic—are contributorily negligent (the *Jess* case).

■ We are here concerned with a much different factual situation from that of *Chadwick* or *Jess*. Cockle and Mitchell intended only a short stop on a lightly traveled street to disengage the cable with which the Mitchell truck was being towed. The evidence was that the trucks were clearly visible and witnesses 400 to 500 feet away were able to see the trucks and the bus after they heard the collision.

There was ample room for any vehicle traveling west, as was the General Electric bus, to pass the stopped trucks on the left.[2] Even the driver of the bus of General Electric said that if it hadn't been for the fog impairing his visibility there would have been no collision. It is recognized that the jury was entitled to believe that there was no fog.

It is easy to see how the accident could have been avoided by pulling the trucks off the traveled portion of the street, or by one driver giving warning signals while the other unfastened the cable which linked the two trucks. The jury might well have agreed with the contentions of the defendants and brought in a verdict for them on the basis of contributory negligence, or even volenti non fit injuria. Reasonable minds, however, could conclude that there was really no appreciable danger in stopping briefly on the little used street, as Cockle and Mitchell did, to disengage the tow cable between the Cockle truck and the Mitchell truck, and that the sole and proximate cause of the collision was the inattention of the General Electric Company's bus driver. The jury did so conclude.

There is nothing in the cases cited by the defendants that persuades us that the trial court erred in refusing to hold

---

[2]There was snow to the depth of three inches on the ground; and the testimony was that there were three ruts in the snow—the center rut apparently being used for the left wheels of cars traveling either east or west, but the situation presented no problem insofar as by-passing the stopped trucks was concerned.

that either contributory negligence or volenti non fit injuria was established as a matter of law.

The judgment appealed from is affirmed.

WEAVER, ROSELLINI, and HALE, JJ., and LANGENBACH, J. Pro Tem., concur.