[No. 37939. Department Two. April 14, 1966.]

DONALD B. BURNS, *Appellant*, v. FRED DILLS, *Respondent*.*

*Reported in 413 P.2d 370.

*McCutcheon & Groshong,* by *W. Ronald Groshong,* for appellant.

*Ferguson & Burdell,* for respondent.

DONWORTH, J.—This is an appeal from a judgment for the defendant based on a jury verdict. The plaintiff, Donald B. Burns, is a surveyor who was struck by defendant's automobile while he was working. The plaintiff will hereafter be referred to ·in this opinion as appellant, and the defendant will be referred to as respondent.

Appellant was in charge of a survey crew (crew chief) employed by the firm of Horton Dennis & Associates. On the day of the accident, January 30, 1962, the survey crew had been working in Renton in the vicinity of the "T" intersection of Eighth Avenue North and Garden Street from midmorning until the time of the accident which occurred at about two minutes before 4 p.m. They were taking boundary and elevation readings of a parcel of land on the southeast corner of the intersection and adjacent to the streets for the purpose of making a topography map to be used for feasibility studies and to obtain information preparatory to the construction of a parking lot for the Boeing Company. This parking lot was subsequently built in February and March of 1962.

The work of the crew during the day required the workmen to move the surveying instruments to the various parts of the parcel of land and the adjacent streets. They were not working at the place where the accident occurred until just shortly before it happened.

The particular work being done by the crew at the time of the accident was the location and marking of a point in Garden Street. The transit was set up on the north shoulder of Eighth Avenue North facing Garden Street. James Huber, a member of the survey crew, and a witness at trial, was operating the transit. The chain man, Charles Kantola, had already marked off the distance to the point to be set in Garden Street (60 feet from the transit), and had withdrawn the measuring tape from across Eighth Avenue North. Huber was sighting through the transit, ,giving ap-

pellant Burns, who was standing in Garden Street, the proper angle, so that Burns could set the P-K nail (a small metal marker pin) at the proper point. Huber had positioned Burns facing north over a point 4.23 feet to the east of the unmarked center line (inside the northbound lane) of Garden Street. Burns then crouched down preparatory to setting the P-K nail in the roadway within the unmarked pedestrian crosswalk.

There is a stop sign for northbound traffic on Garden Street immediately south of its intersection with Eighth Avenue North. An automobile driven by Leslie Killingsworth had stopped about 25 feet south of appellant in the northbound lane of Garden Street, waiting for him to clear the crosswalk. He had been waiting there about two or three minutes for appellant to finish his work when the accident took place. He was an eyewitness to the accident, and stated that, although he did not know the traffic conditions on Eighth Avenue North just prior to the accident, no cars had passed him proceeding either north or south on Garden Street during the time he was waiting for Burns to clear the crosswalk.

Respondent Dills worked at the Boeing Company and had finished his work shift for the day at 3:30 p.m. There was another shift of Boeing's employees scheduled to leave the Boeing plant at 4 p.m. The parking lot in which Dills had parked his car was on the north side of Eighth Avenue North about one block east of Garden Street. As respondent left the parking lot and turned west on Eighth Avenue North, he noticed three or four cars ahead of him, the nearest being about two car lengths in front of his car and the farthest about one block ahead. He testified that he believes that all but one of the cars went straight west on Eighth Avenue North past the intersection with Garden Street, and that only one car turned south into Garden Street. The car immediately in front of respondent apparently proceeded west on Eighth Avenue North. There were cars angle-parked on the north side of Eighth Avenue North so that cars traveling west necessarily straddled the unmarked center line of Eighth Avenue North.

When respondent's car reached about three car lengths from the point where he intended to make his turn into Garden Street, the sun, which was low in the sky, shone brightly in his eyes as the fog momentarily cleared from in front of him. The day had been intermittently overcast, with occasional bright, sunny periods. Respondent did not use his sun visor or his hand to shield the sun from his eyes. He did not see appellant, who was then crouched on the crosswalk in the northbound lane of Garden Street. He was traveling at about 15 m.p.h. as he made the turn. Respondent admits that he cut the corner of Garden Street in the process of making his left turn from Eighth Avenue North into the southbound (west) lane of Garden Street. His car passed to the east of the unmarked center line of Garden Street at the place where he entered it.

Just before the impact of Dills' automobile with appellant, the latter looked up in response to shouted warnings, and tried almost instantaneously to jump to the east out of the way. He had moved, at most, about 2 feet toward the east edge of Garden Street when Dills' car first struck him in the face and head with its left front fender just level with the front hood line.

At the time the accident occurred, appellant was wearing regular work clothes and a red hat. There was no safety cones placed in Eighth Avenue North or in Garden Street. There was no flagman operating in the area nor were there any signs warning of the presence of a survey crew in the area. The surface of the street on which appellant was crouched was a few inches lower than the center crown of Eighth Avenue North from which respondent was executing his left turn. There were no cars or other obstructions which required respondent to pass to the east of the center of Garden Street before entering the southbound (west) lane of Garden Street. Respondent's own testimony on this subject is as follows:

Q. Could you have swung further out to the right or the west and made a proper turn at that time and place? A. Yes, but it would have been a little difficult. Q. But you could have? A. Yes. Q. Was it your custom to cut

this corner? [Objected to as immaterial—sustained by the trial court.] Q. . . . If there had been a car stopped for the stop sign, heading in a northerly direction, could you have easily gotten around that by turning and coming down on your westerly portion of Garden Street? A. I think so.

Barton Dailey, a Renton police officer, who was called to the scene of the accident, arrived after both respondent's car and appellant himself had been removed from the scene. Officer Dailey testified as to the conditions at the time he viewed the scene. He stated that cars were angle-parked on the north side of Eighth Avenue North so that a car traveling west on that street must necessarily straddle the unmarked center line. He was asked by respondent's counsel to give his opinion as to the "ease" or "difficulty" in entering the southbound lane of Garden Street without cutting the corner when making a left turn. Appellant's counsel objected that such a question was "going into the province of the jury" and "immaterial," and was a matter concerning which the jury did not need and should not have expert opinion. The trial court agreed and sustained the objection.

Arthur Hitchings, a surveying company owner, and a former surveyor and survey crew chief, testified by deposition because he was not personally available to attend the trial. He had not seen the area personally. He testified from drawings which he was shown and from the descriptions given him in hypothetical questions. He stated that, in his opinion, a surveyor, working at the point where appellant was crouching at the time he was hit by respondent's car, should have anticipated that drivers would cut this corner because of the narrowness of the driving surface of Garden Street, which was 18 feet.

It is respondent's position that the testimony of Officer Dailey and Mr. Hitchings shows that the physical conditions existing at that time may have made the cutting of the corner of this intersection a practical necessity, and, therefore, the question of whether or not the cutting of the corner

was necessary within the statutory provision of RCW 46-.60.010 is a jury question.

RCW 46.60.010 provides:

Whenever any person is operating any vehicle upon any public highway of this state he shall at all times drive the same to the right of the center of such highway except when in the exercise of care in the overtaking and passing of another vehicle traveling in the same direction, or *where an obstruction exists it is necessary to drive to the left of the center of such highway, providing the same is done with due care and right of way is extended to vehicles traveling in the proper direction upon the unobstructed portion of the public highway.* (Italics ours.)

Respondent correctly contends that this provision must be read in conjunction with the statutory provision in RCW 46.60.130, which reads:

Upon turning to the left at any intersection an operator shall be permitted to make a turn to the left without regard to the center of such intersection: *Provided,* That all wheels of the vehicle shall pass to the right of the intersection entrance markers located on the public highways from or to which such vehicle is entering or leaving such intersection and both such intersection entrance markers are within the arc circumscribed by such left turn. In the event no intersection center marker or intersection entrance markers are installed at an intersection, left turn may be made as though intersection entrance markers are installed, as above set forth, and such turn made with reference to the points at such intersection where such intersection entrance markers would properly be located.

The intersection of eighth Avenue North and Garden Street had no intersection center marker nor intersection entrance markers. Therefore, the last sentence of RCW 46.60.130 is applicable to this case. The proper location of an intersection marker is specified by RCW 46.04.250, which in turn refers to RCW 46.04.240 to determine the outer limits of an "intersection control area." It is not necessary to quote in this opinion the additional statutes referred to, but it should be understood that they have been read and considered by this court.

■ As we read these statutes, they require a driver in the act of making a left turn to stay entirely to the right of the points defined in the trial court's instruction No. 7 (which is consistent with RCW 46.60.130, RCW 46.04.250 and RCW 46.04.240, cited above), *unless* there is an obstruction which makes it necessary to drive with any part of the vehicle to the left of such points, as provided in RCW 46.60.010.

In our opinion, the testimony of Officer Dailey was *immaterial* to this question. He testified only as to the obstruction (parked cars) on Eighth Avenue North, and the necessity of straddling the unmarked center line of Eighth Avenue North (when proceeding west) because of these cars. He did not testify as to any obstructions in Garden Street, nor was he asked about such possible obstructions. The question he was asked about the ease or difficulty of turning left into Garden Street by respondent's counsel was inadmissible for both reasons stated by appellant's counsel. First, if this was to be a jury question, the answer he would have necessarily given would have invaded the province of the jury in a situation where the jury needed no expert testimony.

■ But, aside from that, the question asked by respondent's counsel was whether the entry of the southbound lane of Garden Street from the partially obstructed westbound lane of Eighth Avenue North was *easy* or *difficult*—he did not ask if the southbound lane of Garden Street was obstructed or if cutting the corner was necessary because of the position of a westbound car on Eighth Avenue North. It is *immaterial* whether the proper entry of the southbound lane of Garden Street is easy or difficult—and what the officer's opinion on this point might be is irrelevant to the issue of the *necessity* of driving to the left of the points defined by the statutes cited above, in the absence of some other evidence to show that his opinion refers to practical "necessity" rather than mere "difficulty." Whether the expert thinks it is easy or difficult to obey the traffic laws at a certain location at a certain time is plainly immaterial. If respondent did not obey the applicable laws in making

his left turn, the burden is on him to present *factual* evidence tending to excuse his violation of the applicable statutes by showing some practical necessity therefor. The opinion of an expert cannot be substituted for factual evidence in this context.

Therefore, appellant's assignment of error No. 1 is correct. Respondent was negligent as a matter of law in the manner in which he turned left into Garden Street, according to the undisputed evidence in the record, and the trial court should have so instructed the jury.

Respondent has cited two older Washington cases to demonstrate that the issue of negligence of a driver in cutting a corner is for the jury. These cases are *Kane v. Nakamoto*, 113 Wash. 476, 194 Pac. 381 (1920); and *Farmer v. School Dist. No. 214*, 171 Wash. 278, 17 P.2d 899, 115 A.L.R. 1171 (1933). There is a major distinguishing factor between these cases and the case at bar—the statutes are different. The statutory requirement at the time each of those cases was decided was that the driver who intended to turn left must proceed to at least the center point of the intersection before he could cross the center line of the street from which he was turning.[1]

The law at the present time is that the driver who is turning left may turn in the arc described by RCW 46.60.130, which requires only that he stay to the right of the points of the entrance to the intersection of two streets—the street he is leaving, and the street he is entering. If RCW 46.60.130 had been in effect at the time the cases cited by respondent were decided, it would have placed the turning driver in those cases within the law—making their left turns strictly legal in respect to the statute.

---

[1] See 2 Rem. Comp. Stat., § 6341, p. 1283 (1922) for the statute in effect at the time of the decision in *Kane v. Nakamoto, supra,* and 7 Rem. Rev. Stat., § 6362-41 for the statute in effect at the time of the decision in *Farmer v. School Dist. No. 214, supra.* It should be noted that the plaintiff in the *Kane* case, *supra,* relied on a Seattle ordinance, and the plaintiff-appellant in the case at bar relies on a Renton ordinance. These ordinances were substantially the same as the state statutes in effect at those times.

Furthermore, the cases are distinguishable on their *facts* and the issues decided.[2] Neither case is persuasive with regard to the issue for which they were cited.

Appellant's assignment No. 2 asserts that the trial court should have instructed that the driving of respondent's car was a proximate cause of the accident, as this fact was established by the record beyond dispute. Of course, the trial court did not so instruct the jury because, unless the respondent was to be considered negligent as a matter of law, the instruction pertaining to proximate cause was to be properly connected with the instruction on respondent's alleged negligence. We hold that appellant's assignment of error No. 2 is meritorious because there is no dispute in the record concerning the fact that respondent's driving was *a* proximate cause of the accident. We do not mean to imply that this holding would apply to an instruction that respondent's driving was the *only* proximate cause of the accident. Appellant did not so argue in connection with this assignment.

Appellant's assignment of error No. 3 is immaterial in view of the above disposition of this issue concerning the negligence of respondent.

Appellant's assignment of error No. 4 challenges the giving of the trial court's instruction No. 5, which is based on RCW 47.36.200, which reads:

---

[2]In the *Kane* case, *supra,* the facts that were crucial to the case were in dispute, *and* the appellant (defendant) did not argue that his negligence in "cutting the corner" was a jury question or was not a jury question. He argued that the respondent was contributorily negligent as a matter of law, so that the negligence was not the proximate cause of the accident and that he was entitled to judgment n.o.v.

In the *Farmer* case, *supra,* the court noted that the defendant (respondent) driver had done everything physically possible to come as close to properly turning left around the center point of the intersection but that the school bus could not physically make the turn correctly. It also noted that plaintiff knew that the bus would turn at this corner or the next. The court then admitted that the bus driver may have been technically negligent as a matter of law—but the court held that he was very unlikely to have been the *sole* proximate cause of the accident, because the contributory negligence of the plaintiff left the question of *proximate cause* to the jury.

When construction, repair or maintenance work is conducted on or adjacent to a public highway, county road, street, bridge or other thoroughfare commonly traveled and when such work interferes with the normal and established mode of travel on such highway, county road, street, bridge or thoroughfare, such location shall be properly posted by prominently displayed signs or flagmen or both. Signs used for posting in such an area shall be consistent with the provisions found in the state of Washington "Manual on Uniform Traffic Control Devices for Streets and Highways" obtainable from the Washington state highway commission.

■ Appellant has objected to the trial court's instruction on three grounds. At least one of these has merit. We need not discuss the other two. The statute requires that the warning signs or flags shall be posted "when such work interferes with the normal and established mode of travel on such highway." Appellant's work here did not interfere with the normal mode of travel on Garden Street, at least not with regard to respondent. Respondent's automobile struck appellant when appellant was within an unmarked crosswalk on the opposite side of the street from where respondent's automobile should have been. Furthermore, there was no legally sufficient reason why respondent should have been driving on this part of Garden Street. The evidence on these facts is undisputed in the trial record. The trial court should not have given its instruction No. 5, because it is simply not applicable. To give the instruction was error.

Appellant has assigned error (assignments Nos. 6, 7, and 8) to the failure to give certain instructions on his behalf, and to the giving of certain instructions by the trial court. These assignments raise the issue of whether appellant was in this case both a workman in the streets and a pedestrian with the right of way because of his position in the unmarked crosswalk of Garden Street.

■ The evidence is undisputed that he was within the unmarked crosswalk area. See RCW 46.04.160. It seems clear to us that appellant was both a workman in the street and a pedestrian, as defined by RCW 46.04.400. He, there-

fore, has the rights and responsibilities of both to the extent that they are consistent. See *James v. Edwards, ante* p. 246, 412 P.2d 123 (1966).

 As a workman in the street, appellant had the right to devote his attention to his work, and not neglect it in order to avoid injury by drivers who ignore his rights, either as a workman or as a pedestrian. *James v. Edwards, supra.* As a pedestrian, he had the right to avail himself of the protection of the unmarked crosswalk area and the stop sign which required northbound traffic in Garden Street to stop for him. RCW 46.60.250. He was relying on these rights when the accident occurred, according to his testimony, and the undisputed evidence in the record. Although appellant's instructions were somewhat indirect on these points, this was the theory of appellant's case, and the effect of his proposed instructions. No instructions were given to the jury to the effect that appellant was a pedestrian, a workman, entitled to the rights of each, and that appellant had the right of way over the respondent driver in this case. Failure to give instructions on these points was error.

Appellant's assignment of error No. 9 is that the court erred in failing to give his proposed instruction No. 6, which reads:

> Where an automobile driver's vision is interfered with by the sun, he is obliged to exercise that care and caution which a reasonably careful and prudent driver would exercise in the same or similar circumstances. The sun is not a latent or concealed danger, and gives ample notice of its presence. A driver who fails to exercise the reasonable care and caution required by reason of impairment of vision, is negligent.

Appellant cited as authority for this instruction the case of *Ewer v. Johnson,* 44 Wn.2d 746, 270 P.2d 813 (1954), substituting the interference of the driver's vision by the sun in this case for the dust cloud which interfered with the driver's vision in the *Ewer* case, *supra.*

 No other instruction pertaining to the effect of the sun in respondent driver's eyes was given in the trial court's

instructions. Appellant argues that the jury is thus left to believe, or at least to speculate, that the sun in the eyes of the respondent driver, since it apparently kept him from seeing appellant, relieved him from any negligence—whereas respondent's act in driving when he could not see is negligence. We must agree with appellant. To fail to give adequate instructions to the jury about the significance of the sun in respondent's eyes is error.

Respondent argues that the proposed instruction was erroneous. He claims that the sun was hidden behind clouds until just three car lengths from the point at which he made his turn, and, therefore, it was a latent and concealed danger—contrary to the wording of appellant's proposed instruction—or at least the jury could so find. Therefore, respondent argues that the instruction was a comment on the evidence and was erroneous. Respondent also argues that the sun is materially different from the dust cloud in the *Ewer* case, *supra,* because it broke through the clouds suddenly, and, therefore, was a sudden and unexpected occurrence.

In two ways, the sun and the dust cloud are the same. They are both obviously present and obviously impair vision. Therefore, as a matter of law, the sun is *not* a latent and concealed danger.

The sun is different from the dust cloud in one respect, but, in our opinion, the difference harms rather than helps respondent's position. The difference is that a driver can reduce or even perhaps eliminate the sun's impairment of his vision immediately and still drive his car. Respondent's failure to shield his eyes by the use of his sun visor or his hand was a failure to attempt to remedy the impairment of his vision in a manner which was easily available to him. The fact that the sun broke through the clouds suddenly did not change respondent's ability to solve the problem simply by the use of the sun visor or his hand.

The principle of the *Ewer* case, *supra,* is, therefore, applicable, because the danger was or should have been apparent, *and* could have been avoided by reasonable action of respondent. The case of *Cauble v. Dahl,* 48 Wn.2d 440,

294 P.2d 416 (1956), cited by respondent is not applicable either to show that the visibility problem excused his failure to see appellant in the case at bar, or to show that this was a sudden and unexpected occurrence about which respondent could do nothing. The *Cauble* case, *supra,* concerned limited visibility due to falling snow, which is not too unlike a cloud of dust. The sun, although it impairs visibility, is not an occurrence about which the respondent could do nothing.

Appellant's assignment of error No. 10 is simply that the trial court erred in entering the judgment of dismissal based on the jury verdict, and in failing to grant him a new trial based on the various errors discussed in connection with the other assignments discussed above. We must agree.

The judgment of the trial court is hereby reversed and the cause remanded to the trial court with directions to grant appellant a new trial to be conducted in a manner consistent with this opinion.

ROSELLINI, C. J., FINLEY and WEAVER, JJ., and LANGENBACH, J. Pro Tem., concur.

June 10, 1966. Petition for rehearing denied.