[No. 863-3.    Division Three.    August 27, 1974.]

GERALD MCKILLIP, *Appellant,* v. UNION PACIFIC RAILROAD COMPANY *et al., Respondents.*

*Herbert H. Freise* (of *Freise & Lutcher*) and *Hildebrand, McLeod & Nelson, Inc.,* for appellant.

*Hamblen, Gilbert & Brooke, P.S.* (*William F. Nielsen,* of

counsel), *Randall B. Kester,* and *James B. Mitchell* (of *Reese & Mitchell*), for respondents.

McINTURFF, J.—Plaintiff appeals from a directed verdict and dismissal of defendant Union Pacific Railroad Company (hereafter railroad), and from a judgment upon a jury verdict in favor of defendant Rickie Magnaghi (hereafter defendant).

On December 5, 1969, plaintiff, an employee of railroad, was working as a conductor and flagman on a "detector car" used to detect flaws in the railroad's rails. Defendant railroad had contracted with Sperry Rand Corporation, owner of the detector car, to have their rails examined in the Walla Walla area, and plaintiff was provided by the railroad to accompany the detector car. About 5 p.m. the detector car approached the railroad crossing at Rose Street, which runs east and west in the city of Walla Walla. The detector car stopped short of the crossing; plaintiff left the car, unlocked and lined the switch for the track, and walked onto Rose Street, swinging a lantern furnished by the railroad to flag traffic. Initially, plaintiff swung his lantern facing the westbound traffic. When the lead car of the westbound traffic was approximately 150 to 200 feet away, plaintiff turned his back and proceeded to flag the eastbound traffic on Rose Street. The evening was dark and misty, and plaintiff was dressed in dark clothing. The eastbound motorists on Rose Street stopped for plaintiff's signal, but the nearest westbound vehicle, driven by defendant, continued into the crossing, striking the plaintiff, causing a broken leg and other alleged injuries.

At the close of plaintiff's case the railroad moved for dismissal on the ground that there was no evidence of negligence on the part of the railroad. The trial court directed a verdict for the railroad. The action against defendant was submitted to the jury, with an instruction on contributory negligence. The jury returned a verdict in defendant's favor.

Initially, plaintiff contends the trial court erred in grant-

ing defendant railroad's motion for a directed verdict dismissing the railroad as a party defendant, and denying plaintiff's motion for reconsideration of this decision. Plaintiff argues that the record contains evidence presenting questions (1) whether the plaintiff's lantern, furnished by the railroad, was dim and hard to see at the time of the accident; (2) whether the detector car had adequate lighting to warn motorists that it was approaching the crossing; (3) whether defendant railroad had a duty to supply plaintiff with clothing adequate to warn motorists of his presence on Rose Street; and (4) whether the railroad crossing had sufficient lighting, warning signs or signals to warn motorists of the approach of the detector car.

Defendant railroad's liability is governed by the provisions of the Federal Employers Liability Act, 45 U.S.C.A. § 51, under which the railroad carrier has a duty to furnish its employees with a safe place to work. This duty extends beyond the carrier's premises to property which third parties have a primary obligation to maintain. *Carter v. Union R.R.*, 438 F.2d 208 (3d Cir. 1971). Under 45 U.S.C.A. § 51, liability is imposed upon a carrier to pay damages for injuries or death, whether due in whole or simply in part to its negligence. *Rogers v. Missouri Pac. R.R.*, 352 U.S. 500, 1 L. Ed. 2d 493, 77 S. Ct. 443 (1957). The negligence of the employer need not be even a substantial cause of the ensuing injury. *Parker v. Atchison, T. & S.F. Ry.*, 263 Cal. App. 2d 675, 70 Cal. Rptr. 8 (1968). In cases under 45 U.S.C.A. § 51, the quantum of evidence required is less than in an ordinary negligence action. W. Prosser, *Law of Torts* § 80 at 535-36 (4th ed. 1971), states:

> Liability must still be based on negligence, the breach of some duty found to rest upon the employer, and to this extent the statutes do no more than to preserve the common law remedy. . . .
> . . . While it is still undoubtedly true that there must be some shreds of proof both of negligence and of causation, and that "speculation, conjecture and possibilities" will not be enough, there appears to be little doubt that under the statute jury verdicts for the plaintiff can

be sustained upon evidence which would not be sufficient in the ordinary negligence action.

(Footnotes omitted.)

Therefore, in determining the propriety of a directed verdict in an action under the Federal Employers Liability Act, 45 U.S.C.A. § 51, it must be determined whether there is any shred of proof of negligence on the part of defendant railroad, and if so, whether there is any proof of causation between the defendant railroad's negligence and the resultant injury. A finding of a mere shred of proof in each instance requires the submission of the issues to the jury. The plaintiff's burden in presenting a jury question under the Federal Employers Liability Act is substantially reduced.

Additionally, long-standing legal principles, applied to ruling on a motion for directed verdict, apply with equal force: The moving party admits for the purpose of ruling on the motion the truth of all evidence and its reasonable inferences presented by the nonmoving party; and, evidence is interpreted in the light most favorable to the nonmoving party. *Moyer v. Clark*, 75 Wn.2d 800, 454 P.2d 374 (1969).

Applying this burden, we find no error in the trial court's order directing verdict for defendant railroad. In his own testimony plaintiff stated that the detector car was properly lighted and properly sounded its bell and whistle when moving toward the railroad crossing. He testified his lantern was in good working order and sufficiently bright to warn of his presence. The record also establishes that plaintiff had flares at his disposal aboard the detector car, to be utilized at his discretion for stopping traffic at the crossing. There is no evidence showing that the railroad should have supplied the plaintiff with bright or luminous clothing capable of being seen in periods of darkness. Lastly, there is no evidence directed at showing that the crossing was not adequately lighted or that sufficient warning signs or signals were not provided at the crossing.

There being no evidence presented to buttress either of

the contentions concerning the adequacy of clothing and warnings at the intersection, there was nothing for the jury to decide. To allow the jury to decide these issues without evidence would be to allow the jury to speculate and roam the fields of conjecture.

■ Plaintiff next contends the trial court erred in submitting the question of contributory negligence to the jury since the record does not contain sufficient evidence to support an instruction on contributory negligence. *Hughey v. Winthrop Motor Co.*, 61 Wn.2d 227, 377 P.2d 640 (1963). The basis for contributory negligence is aptly stated by Judge Steinert in *Chadwick v. Ek,* 1 Wn.2d 117, 129, 95 P.2d 398 (1939):

> The doctrine of contributory negligence rests upon the principle that a person is never absolved from exercising reasonable and ordinary care for his own safety and cannot thrust all responsibility upon others.

Before the trial court can remove the contributory negligence issue from the jury's consideration, the evidence must be such that all reasonable minds would agree that the plaintiff had exercised the care which a reasonably prudent man would have exercised for his own safety under the circumstances. *Bauman v. Complita,* 66 Wn.2d 496, 403 P.2d 347 (1965); *Poston v. Mathers,* 77 Wn.2d 329, 462 P.2d 222 (1969).

It is usual for the existence of contributory negligence to be determined by a jury from all facts. A trial court is justified in withdrawing the issue from the jury only in a clear case when substantial evidence to support the verdict is lacking. *Tusnadi v. Frodle,* 8 Wn. App. 239, 505 P.2d 165 (1973); *Raybell v. State,* 6 Wn. App. 795, 496 P.2d 559 (1972); *Baxter v. Greyhound Corp.,* 65 Wn.2d 421, 397 P.2d 857 (1964).

The evidence indicates that the plaintiff was wearing dark clothing, turned his back to moving westbound traffic 150 to 200 feet from him, when the weather was misty and dark. An additional factor to be considered is that flares were not used but were available to the plaintiff at his

discretion. This was substantial evidence upon which to present the question of contributory negligence to the jury.

Plaintiff argues that he was entitled to be considered in a special status because he was a workman on the highway and therefore the contributory negligence instruction was improper. In *James v. Edwards,* 68 Wn.2d 194, 196-97, 412 P.2d 123 (1966), the court said:

> We think the proper rule is that a workman in the street has a special status which must be considered in determining whether he has exercised due care for his own safety. A worker is not required to exercise the same degree of care required of an ordinary pedestrian, but must exercise that care which an ordinarily prudent man, similarly employed in the street, would and could take to avoid injury by passing vehicles. See 5 A.L.R.2d 757.
>
> A worker is not required to keep a constant lookout for approaching vehicles, and the question whether such a worker has exercised reasonable care for his own safety in view of his occupation and surrounding circumstances is for the jury under the rule stated above.

*See also Burns v. Dills,* 68 Wn.2d 377, 413 P.2d 370 (1966), and *Cockle v. General Elec. Co.,* 70 Wn.2d 846, 425 P.2d 665 (1967).

The plaintiff may have had a special status—that of a worker on a highway—however, there was substantial evidence upon which the jury might decide, even with the consideration of this special status, whether the plaintiff used reasonable care under the circumstances.

Plaintiff next urges that the court erred in failing to instruct on the first phase of the doctrine of last clear chance. Plaintiff's proposed instruction No. 22 reads as follows:

> If you find the plaintiff was negligent and that plaintiff's negligence continued up to the time of the accident and if you find that the defendant, Rickie Magnaghi actually saw the plaintiff in peril and if thereafter the defendant, Rickie Magnaghi had the time and opportunity to avoid the accident by the exercise of ordinary care, he had a duty to do so. If you find that the defend-

ant, Rickie Magnaghie failed to do so and that his failure was a proximate cause of the accident, he is liable notwithstanding plaintiff's own negligence.

Plaintiff contends that the testimony of defendant and Wasser, the driver following him, requires that the trial court instruct on the first phase of the last clear chance doctrine. Defendant said:

Q Talking with your brother, were you?
A No.
Q From the time you left school to the time of the accident you had no conversation?
A Not until he saw Mr. McKillip.
Q He saw him [plaintiff] first, is that right?
A Well, he saw him and he started to say something, and just at that time I had seen him.
Q Did he say something?
A He started to and—let's see, what did he say? He said, "Look out, there is somebody standing there," and just as he said, "Look out," I saw him.
Q About how far away from Mr. McKillip were you at that time?
A Approximately 20 feet.
Q Twenty feet?
A Well, 20 yards.
Q 60 feet?
A Yes.
    . . .
Q How fast were you going?
A About 25 to 30 miles an hour.
Q And you could stop that car to a dead stop in 60 feet at 25 miles an hour, could you?
A Yes.

Mr. Wasser's testimony:

Q Did you see his brake lights at any time before he swerved?
A Not before he swerved, no.
Q After he swerved?
A During the swerve. Just a flash, just a moment flash and that is all.

Concerning last clear chance, the court in *Wigton v. Gordon*, 3 Wn. App. 648, 649, 477 P.2d 32 (1970), stated:

Unless there is a clear opportunity for the defendant to

avoid the accident, when interpreting the evidence most favorable to the plaintiff, the doctrine does not apply. *Shiels v. Purfeerst*, 39 Wn.2d 252, 235 P.2d 161 (1951). The uncontroverted evidence shows that the defendant applied his brakes as soon as he saw the appellant, but nevertheless was unable to stop in time, after skidding "approximately seventy-five or ninety feet . . ." The proof of defendant Gordon's effort to stop and avoid the accident precludes any finding as a matter of law that he had a last clear chance to avoid the accident. In other words, the jury should not be permitted to speculate on what else the defendant might have done to avoid colliding with the appellant.

The key to the first phase of the last clear chance doctrine is that one must "actually see the peril" and have sufficient time to appreciate the danger and effectively act. *Radecki v. Adams*, 63 Wn.2d 535, 536, 387 P.2d 974 (1964); *Chapman v. State*, 6 Wn. App. 316, 492 P.2d 607 (1972). Whether a jury should be instructed on the issue of last clear chance is a question of law. *Radecki v. Adams, supra.*

Defendant stated that he estimated the distance from the plaintiff, at the time he first saw him, to be 60 feet, and that he could stop his car when going 25 m.p.h. within that 60 feet. However, defendant said later he was 15 to 20 yards (45 to 60 feet) away, but that he "was not a good estimator." The above testimony indicates that he was uncertain of his exact speed or the exact distance involved. Credibility is given to the statement by the witness Wasser, who said defendant's car was going 28 m.p.h. It is further noted that defendant nearly stopped before hitting the plaintiff. There is no testimony that the car could have stopped in 60 feet at 26 to 30 m.p.h. The testimony of Wasser that he saw the brake lights of defendant's car go on only once briefly is clarified by defendant's explanation that the highway was damp and slippery so he did not want to lock his brakes.

Defendant actually saw the plaintiff but, because of all the evidence, we find the defendant did not have sufficient time to appreciate the danger and act effectively. That evidence includes defendant's estimate of being 15 to 20 yards

away from plaintiff at the time he first observed him; the testimony that defendant could stop within 60 feet at 25 m.p.h., therefore making it impossible to unequivocally conclude that he could stop if he was going more than 25 m.p.h.; and the fact that he was nearly stopped when the accident occurred. Thus he did not have the last clear chance to avoid the accident under the first phase of that doctrine.

Lastly, plaintiff urges that the trial court erred in refusing to admit evidence of defendant's driving record for the year preceding the accident. Plaintiff argues that counsel for defendant, in direct examination, elicited testimony from him with respect to the length of time he had been driving, the length of time he had been driving the accident vehicle, and the fact that defendant had taken and passed a driver's education course at Walla Walla High School. Plaintiff contends that introduction of this evidence inferred that defendant was skilled, and a knowledgeable driver, so that this testimony opened up the area of defendant's driving record for cross-examination.

We do not agree. Testimony merely showed that defendant was a licensed driver of a motor vehicle, which in turn required satisfactory completion of a driver's education course in order to obtain a vehicle driver's license prior to attaining the age of 18 years. Defendant did not testify as to any special skills and did not hold himself out to be a careful driver during the testimony.

Judgment of the trial court is affirmed.

GREEN, C.J., and MUNSON, J., concur.