[No. 2222-1.   Division One.   January 6, 1975.]

JOHN MILTON GRIGSBY, JR., *Appellant*, v. THE CITY OF SEATTLE, *Respondent.*

*Lembhard G. Howell,* for appellant.

*John P. Harris, Corporation Counsel,* and *Philip M. King, Assistant,* for respondent.

FARRIS, J.—John Milton Grigsby was a passenger in an automobile which collided with another in the last half of an unmarked S-curve. The Grigsby vehicle was in the wrong lane and met the other car head on. Grigsby claimed gross negligence against his driver and settled for $2,500 prior to the trial of his action against the City. In his action against the City, Grigsby alleged that he suffered severe permanent injury as a result of the negligent design, construction and maintenance of the street. A jury returned a defense verdict. He appeals from judgment entered on that verdict.

Grigsby assigns error to (1) the refusal of the trial court to permit an expert to testify that given the degree of elevation and curvature of the road, advisory signs should have been posted, (2) the refusal of the trial court to permit introduction into evidence of a "Manual for Signing," a State Highway Department publication, which purported to show that the curve in question required posting of a warning sign, (3) the giving of certain instructions by the trial court and the refusal to give others, and (4) the fact that the trial court informed the jury of the prior settlement but refused to permit Grigsby to reveal its amount.

█ A properly qualified expert may testify concerning "matters in which special experience, skill, or education is required for reaching reasonable and rational conclusions." 5 R. Meisenholder, Wash. Prac. § 351, at 329 (1965); *Knight v. Borgan,* 52 Wn.2d 219, 324 P.2d 797 (1958); *State v. Smith,* 2 Wn. App. 769, 470 P.2d 214 (1970). Because the admissibility of such testimony rests within the discretion of the trial court, *Litts v. Pierce County,* 9 Wn. App. 843, 515 P.2d 526 (1973), 5 R. Meisenholder, Wash. Prac. § 352 (1965), the trial court's ruling denying admissibility will not be overturned unless the exercise of discretion was "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971); *Malfait v. Malfait,* 54 Wn.2d 413, 341 P.2d 154 (1959); *Reid Sand & Gravel, Inc. v. Bellevue Properties,* 7 Wn. App. 701, 502 P.2d 480 (1972).

Here the trial court's refusal to admit certain expert testimony was not based on a quarrel with the expert's qualifications.

> There is no question he is qualified as an expert witness. He is probably one of the most outstanding expert witnesses that I have had before me for some time. But that is beside the point. The point is I am going to have to follow the law on this case, and I made a ruling yesterday.

The court gave as its reason:

> We have sufficient factual evidence already introduced in this case in chief by the plaintiff, and it would be improper to allow this witness to use his opinion as a substitution for the factual evidence in this case.

In so ruling, the trial court relied upon *Burns v. Dills,* 68 Wn.2d 377, 384, 413 P.2d 370 (1966).

In *Burns v. Dills, supra,* the testimony of an expert was ruled inadmissible because (1) the question asked of the expert did not involve an issue requiring special competence, and (2) the testimony was immaterial in that the expert would testify only as to whether a proper left turn was "easy" or "difficult" under the situation and not whether the proper turn was foreclosed by an "obstruction," as required by statute. The Supreme Court held that the testimony of the expert concerning the "difficulty" of complying with the statute could not substitute for a factual showing that an obstruction existed. In relying upon *Burns v. Dills, supra,* to prohibit expert testimony on the issue of the City's negligence, the trial court improperly and indirectly imputed the negligence of the driver to Grigsby.

The City argued successfully to the trial court that Grigsby's driver testified

> specifically that he did not need a sign to tell him that there was loose gravel on the road, that he did not need a sign to tell him that there was a reverse curve in existence at that location. That he already knew those two facts when he entered the intersection.

This argument is apparently a summary of the cross-examination of the driver.

> Q Yes. And you say you had been on this street and made this same curve where the accident happened the week before the accident?
>
> A Yes.
>
> Q But you were going the opposite direction, you say?
>
> A Yes.
>
> Q So in any event, you knew in advance that the curve was there?
>
> A Yes.

Q  So you didn't need a sign to tell you that, did you?
A  No.
Q  And you knew that it was a gravel street because you had been on it before, just the week before?
A  Yes.
Q  You didn't need a sign to tell you that?
A  No.
Q  And you knew the nature of the curve, because you had been on it before?
A  As far as going south, yes, I knew what it was like, since I had already been down it.
Q  All right. So, in any event, you didn't need a sign to tell you that you should slow down for a curve, did you?
A  No.

While we do not know what weight the jury gave to the driver's testimony, we can observe that the cross-examination did not destroy the force of the direct examination wherein the driver testified:

Q  Now, had you traveled that street before?
A  I had been on it one other time about a week back, going in the opposite direction that I was going on this Sunday.
Q  So you were heading south on that street before?
A  Yes, before.
Q  Now, you said you had come down that street before. That is only a block away from you. But you had no occasion to use that street before?
A  No.

The fact that one has successfully traveled a road on one prior occasion in the opposite direction does not as a *matter of law* make him knowledgeable on how the road should be traversed. A similar question was before the court in *United States v. Washington*, 351 F.2d 913 (9th Cir. 1965), where the United States contested liability for the death of a passenger in an airplane which collided with an unmarked electrical transmission line. We find the reasoning of the court compelling here:

The Government contends that since the pilot knew of the existence of the lines, there was, as to him, no duty for additional warning. . . . The contention is unten-

able. The pilot was knowledgeable as to the general location of the span but immediately before impact and with negligent inattention, was obviously not aware of its precise location and its proximity to his approaching aircraft. One may know of the general location of a house and pass it by. Drivers may generally know that they must cross a heavily traveled thoroughfare, but there may be a need for traffic control or warning devices to alert the inattentive. Negligence which comes from momentary inattention or mental digression is not uncommon, and duty to warn of danger runs not only to the careful, but also to one whose unalerted carelessness may victimize the innocent.

(Footnote and citation omitted.) *United States v. Washington, supra* at 916-17.

Unlike *Burns v. Dills, supra,* the jury could find that the alleged negligence of Grigsby's driver is explained if it finds that the City was negligent in failing to properly post signs. The testimony of the expert was neither immaterial nor a "substitute" for factual evidence. Whether a sign would have reminded the driver of the hazard or acquainted him with the danger involved was a question of fact. In denying Grigsby the opportunity to present the testimony of his expert, the trial court prevented Grigsby from presenting to the jury a crucial link in his proof of the City's negligence. The expert testimony would have enabled the jury to determine whether the City violated a standard of care owed to users of the road by failing to post a sign, if it found as a fact that (1) a sign would have acquainted the driver with or alerted him to the danger and that (2) the danger was not and should not have been apparent. The trial court exercised its discretion on untenable grounds. The offered testimony on those points should have been admitted.

■ The court properly excluded the signing manual (exhibit No. 19) in that it contained advisory recommendations with respect to signing of highways, many of which were not pertinent in the case at issue. It also required expert interpretation of its provisions. *See Valley Land*

*Office, Inc. v. O'Grady,* 72 Wn.2d 247, 253, 432 P.2d 850 (1967), *modified Nordstrom v. White Metal Rolling & Stamping Corp.,* 75 Wn.2d 629, 453 P.2d 619 (1969).[1]

It was error for the trial court to reveal to the jury that Grigsby settled a claim against his driver. *See Svea Fire & Life Ins. Co. v. Spokane, P. & S. Ry.,* 175 Wash. 622, 28 P.2d 266 (1933) and *Moore v. Stetson Mach. Works,* 110 Wash. 649, 188 P. 769 (1920). The jury need not have known that the driver had been a party to the action. In a retrial of the cause, it should be unnecessary for the court to make any explanation regarding the absence of the driver as a party defendant.

We need not consider the assignments of error to the instructions given since the admission of expert testimony will necessitate new and different instructions to the jury. We have no doubt that the trial court will give instructions that conform to the pleadings, *Hayden v. Insurance Co. of North America,* 5 Wn. App. 710, 490 P.2d 454 (1971), permit each party to argue his or her theory of the case to the jury, *Hester v. Watson,* 74 Wn.2d 924, 448 P.2d 320 (1968), and find sufficient evidentiary support in the record. *Elmer v. Vanderford,* 74 Wn.2d 546, 445 P.2d 612 (1968). The question of proximate cause will be pivotal but instructions on the issue cannot impute the negligence, if any, of the driver of the vehicle in which Grigsby was riding to Grigsby. *Sonnenberg v. Remsing,* 65 Wn.2d 553, 398 P.2d 728 (1965). Further, care must be taken to avoid over emphasis on the contentions of either party.

Reversed and remanded.

Swanson, C.J., and Horowitz, J., concur.

Petition for rehearing denied May 8, 1975.

Review denied by Supreme Court July 29, 1975.

---

[1]We make no ruling on the admissibility of relevant sections of the the manual since that question is not before us.