[No. 2333-1. Division One. May 26, 1975.]

LEO LARSON et al, *Appellants,* v. ERNIE PISCHELL et al,
*Respondents.*

*Robert L. Butler* and *Richard M. Barney, Jr.,* for appellants.

*Anderson, Hunter, Dewell, Baker & Collins* and *Julian C. Dewell,* respondents.

ANDERSEN, J.—

FACTS OF CASE

Plaintiffs were patrons of the defendants' beach-front restaurant and cocktail lounge on Whidbey Island.

It was a dry, sunny Saturday when the plaintiff wife, aged 54, fell and injured herself while on defendants' property. For convenience, reference herein to the singular "plaintiff" is to Mrs. Larson who sustained the injury. She and her husband had just left the restaurant building and they were heading toward their parked car at the time.

The date was July 10, 1971. It is uncontroverted that plaintiffs were business invitees of the defendants.

The precise place of the fall and manner in which it occurred were in issue.

The plaintiffs and the couple with them testified the fall occurred when the heel of plaintiff's shoe caught in a hole on an outside ramp or incline on the way from the restaurant building to the parking lot.

The testimony of defendants' witnesses was to the effect that the injury occurred after the plaintiff had reached the gravel parking area. In their testimony, they also questioned the sobriety of the plaintiff at the time she fell.

Plaintiffs' access to the cocktail lounge and restaurant on the day in question was from the resort parking lot where they left their car. They and their friends crossed a sidewalk, walked up a ramp or incline to a flat concrete area and then up a flight of some 21 steps to the lounge overlooking Puget Sound. The entire area is open until one enters the cocktail lounge and restaurant. The fall occurred on their way out after having had some drinks in the cocktail lounge.

The ramp where plaintiffs allege the fall occurred is of concrete aggregate. Plaintiffs' witnesses testified that it was unduly steep, slippery, rocky, and had several 2- to 2½-inch diameter holes in it of sufficient size to catch the heel of a lady's shoe.

Defendants' witnesses deny that the area was unsafe. As to the holes, one of the defendants testified that they were filled at the time the injury occurred, but that high waves during a later storm caused the filling material to come out.

Following a 5-day trial, the jury returned a verdict for

the defendants. Plaintiffs' motion for a new trial was denied. A judgment for the defendants was entered and plaintiffs bring this appeal.

Defendants cross-appeal from a ruling of the trial court prohibiting use of the plaintiff's signed statement for impeachment purposes at the trial.

## ISSUES

There are three dispositive issues.

ISSUE ONE. Was there sufficient evidence of plaintiff's intoxication and contributory negligence to justify those issues being submitted to the jury?

ISSUE TWO. Do parties waive their objection to expert testimony on a subject which is opened by testimony of their own witness?

ISSUE THREE. Did the trial court err in instructing the jury that a business invitee must look out for his or her own safety?

## DECISION

ISSUE ONE.

CONCLUSION. Sufficient evidence of contributory negligence and intoxication was introduced in this case to warrant the jury being instructed on those issues.

The trial court used pattern jury instructions to instruct on contributory negligence and on intoxication as contributory negligence. WPI 11.01, 12.01, 6 Wash. Prac. 72, 79 (1967). Plaintiffs question the sufficiency of the evidence to justify those instructions.

During presentation of their own case in chief, plaintiffs themselves, and the couple who accompanied them, testified to how much all of them had to drink before the fall occurred.

This may well have been good trial tactics under the circumstances, but it also put before the jury evidence as to the consumption of alcohol by the plaintiffs and their friends. Such testimony showed that over a time span testified variously as being from about 3 hours up to 6 hours or more, the plaintiff had at least three drinks of intoxicants and her husband had about six.

The defendants both testified that the plaintiff was served two vodka drinks while she was at the cocktail lounge. One of the defendants testified that when the plaintiff left, she appeared intoxicated and had to be assisted.

The defendants' own testimony concerning plantiff's intoxication was not particularly strong.

One of the defendants' employees, however, testified that when the plaintiff left the cocktail lounge, her condition was such that her two friends were holding onto her arms to steady her. The employee then went to the window and watched them go down the steps and out toward the parking lot. The employee further testified that plaintiff was leaning rather heavily on the friends who were helping her and that after she got out into the parking lot, her knees buckled under her and she hit the ground in a kneeling position.

The testimony as to the intake of alcohol by the plaintiff, the time during which it was consumed and her condition when she left the bar was sufficient evidence to warrant giving the instruction on intoxication. *Hannaford v. Hornby*, 53 Wn.2d 565, 567, 335 P.2d 473 (1959); *Burget v. Saginaw Logging Co.*, 197 Wash. 318, 320, 85 P.2d 271 (1938).

■ Where the doctrine of contributory negligence applies, before a trial court can remove it as an issue from the jury's consideration, the evidence must be such that all reasonable minds would agree that the plaintiff had exercised the care which a reasonably prudent person would have exercised for her own safety under the circumstances. *Bauman v. Complita*, 66 Wn.2d 496, 497, 403 P.2d 347 (1965); *McKillip v. Union Pac. R.R.*, 11 Wn. App. 829, 833, 525 P.2d 842 (1974).

The evidence of intoxication together with the testimony by defendants' employee as to how the fall occurred constituted sufficient evidence to justify the submission of the issue of contributory negligence to the jury.

Issue Two.

Conclusion. Where parties open a subject in their case

in chief, they cannot later object to evidence offered on the same subject by their opponents.

During presentation of plaintiffs' case, they called an expert witness who testified as to his familiarity with the Island County Building Code and who stated his opinion as to numerous violations of it by defendants. This included testimony which showed that plaintiffs' expert assumed the incline area, where plaintiffs testified that the fall occurred, was an "exit way" under the code. Predicated on this, the expert testified that the incline was a "ramp" and violated the requirements of the code.

Then in defendants' case, the defendants called an expert witness who voiced a differing opinion on the subject. His testimony relating to the incline included that "[i]t is not, strictly speaking, an exit way." Following such testimony, plaintiffs' expert resumed the stand and testified that the inclined area definitely was an exit way in his opinion.

Plaintiffs assign error to the defense expert's testimony that the inclined area was not an exit way. They argue that this was an issue of law and such testimony invaded the province of the court.

 Whether such testimony by the defense expert was the proper subject of expert testimony, we do not here determine. The subject having been raised by plaintiffs in their case in chief, they cannot now be heard to claim it was error. *Sullivan v. Dunn*, 46 Wn.2d 255, 257, 280 P.2d 668 (1955); *Dravo Corp. v. L.W. Moses Co.*, 6 Wn. App. 74, 87, 492 P.2d 1058 (1971).

ISSUE THREE.

CONCLUSION. Under the circumstances testified to in this case, an instruction that the plaintiff also had a duty to look out for her own safety was not error.

The trial court used pattern jury instructions to instruct the jury as to the defendants' duty toward business invitees. WPI 60.01, 120.06, 6 Wash. Prac. 235, 320 (1967). The court also instructed that it is not contributory negligence to fail to look for danger unless there is some reason to

apprehend danger[1] and, further, by instruction No. 11, that a business invitee must look out for his own safety.[2]

■ Plaintiffs argue that instruction No. 11 (see footnote 2 *supra*) was error because it injected the issue of assumption of risk into the case. The questioned instruction relates to the injured lady's duty to use reasonable care for her own safety. That is contributory negligence language. *Rosendahl v. Lesourd Methodist Church*, 68 Wn.2d 180, 182, 412 P.2d 109 (1966); *Heinlen v. Martin Miller Orchards, Inc.*, 40 Wn.2d 356, 360, 242 P.2d 1054 (1952). It did not impart the issue of assumption of risk into the case.

Plaintiffs further argue that instruction No. 11 (see footnote 2 *supra*) incorrectly states the law. The same instruction given in this case as instruction No. 11 was given in *Impero v. Whatcom County*, 71 Wn.2d 438, 450, 430 P.2d 173 (1967), also a business invitee case, and it was there held to correctly state the applicable law.

In the present case, there was evidence from which the jury could believe that plaintiff walked down a steep, slippery and rocky ramp which had several deep holes in it and that she fell on it. There is also testimony from which they could believe that she was familiar with the ramp or incline having walked up or down it on some 12 to 16 prior occasions and that she did so on this occasion while she was under the influence of intoxicating liquor.

In view of the evidence presented, there is no incompatibility between instructions No. 6 and No. 11 (see footnotes 1 and 2 *supra*).

---

[1]"You are instructed that, in considering and determining whether or not the plaintiff was contributorily ngligent [*sic*], it is not contributory negligence to fail to look for danger unless there is some reason to apprehend danger.

"While one must use his faculties and senses to discover and avoid danger, yet, where there is no reason to anticipate danger or a hazard, reasonable care does not require one who was walking in a place provided for that purpose to keep his eyes fixed to the area immediately in front of his feet." Instruction No. 6.

[2]"A business invitee must look out for his own safety and in doing so is required to use that degree of care which a reasonably careful person, of ordinary intelligence, would exercixe [*sic*] under like or similar circumstances." Instruction No. 11.

■ .Instructions are generally considered sufficient if they are supported by substantial evidence and allow a party to argue sensibly his or her theories of the case. *Samuelson v. Freeman*, 75 Wn.2d 894, 899, 454 P.2d 406 (1969). Measured by this test, the giving of instruction No. 11 was not error.

■ Plaintiffs also assign error to the trial court's failure to give their proposed instruction No. 21. In excepting, some portion of the proposed instruction was read into the record and some of it was paraphrased. Nowhere is the full proposed instruction set out verbatim in the statement of facts as required by CAROA 34(9). It has repeatedly been held that for reasons of sound judicial policy, that rule is to be strictly applied. *Porter v. Chicago, M., St. P. & Pac. R.R.*, 41 Wn.2d 836, 839, 252 P.2d 306 (1953); *Hampton v. Carlson*, 6 Wn. App. 390, 393, 492 P.2d 1385 (1972).

This court is, therefore, unable to consider the error assigned to the trial court's refusal to give plaintiffs' proposed instruction No. 21. It should be further noted that the proposed instruction was not contained in the transcript either.

At the trial of this case, there were several material factual disputes between the parties. The jury to which the case was submitted saw fit to return a verdict for the defendants. The judge presiding over the trial declined to grant a new trial. We find no prejudicial error.

In view of the disposition of plaintiffs' appeal, the merits of defendants' cross-appeal are not reached.

Judgment affirmed.

WILLIAMS, C.J., and CALLOW, J., concur.

Petition for rehearing denied September 29, 1975.

Review denied by Supreme Court December 15, 1975.